UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **JARED MUELLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 03-CV-2145 |
| ) | |
| **KANKAKEE COUNTY, ILLINOIS, an** ) | |
| **Illinois Unit of Local Government, JULIE** ) | |
| **BOUDREAU, individually and in her Official** ) | |
| **capacity as Director of the Kankakee County** ) | |
| **Animal Control Dept., and HENRY MICHAEL** ) | |
| **BERTRAND, a/k/a MIKE BERTRAND,** ) | |
| **individually,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

On August 25, 2003, Plaintiff, Jared Mueller, through his attorney, Charles E. Ruch, Jr., filed a Complaint (#1) against Defendants, Kankakee County, Julie Boudreau and Mike Bertrand. Plaintiff alleged that Defendants Boudreau and Bertrand seized horses belonging to Plaintiff in violation of his constitutional rights. On September 15, 2003, Defendants County of Kankakee and Boudreau filed an Answer and Affirmative Defense (#10). On September 24, 2003, Defendant Bertrand filed his Answer and Counterclaim (#11). In his Counterclaim, Bertrand sought payment of $2,723.00 in unreimbursed expenses for the care of the horses, including feed and veterinary bills. On October 3, 2003, Plaintiff filed his Answer to Bertrand's Counterclaim (#14). On November 25, 2003, following a Rule 16 hearing, a Scheduling Order (#15) was entered. In the Order, a jury trial was scheduled for July 25, 2005.

On September 7, 2004, Plaintiff filed a pro se Petition (#28) in which he stated that he was having problems with his attorney, Charles E. Ruch, Jr., in that his attorney was not communicating with him or working on the case. Plaintiff asked that discovery deadlines be extended. On October

14, 2004, a hearing was held before Magistrate Judge David G. Bernthal. At the hearing, Attorney Ruch made a oral motion to withdraw as Plaintiff's attorney. Judge Bernthal granted Attorney Ruch's oral motion. Plaintiff informed the court that he was proceeding pro se but intended to hire new counsel as co-chair. The parties agreed that discovery deadlines needed to be extended in the case. A further hearing was held on November 23, 2004. At that hearing, Judge Bernthal approved an amended scheduling order agreed to by the parties, after making some additions. Judge Bernthal set a dispositive motion deadline of July 25, 2005, and set the case for a jury trial on November 28, 2005. An Amended Discovery Order (#34) was entered on December 1, 2004.

On July 14, 2005, Defendant Bertrand filed a Motion for Summary Judgment (#42) which included a Memorandum in Support and supporting exhibits. Defendant Bertrand also filed a Motion for Leave to File an Amended Answer, Counterclaim and Affirmative Defense (#41). This Motion was granted on August 5, 2005, and Defendant Bertrand filed his Amended Answer (#49) which included the Affirmative Defense of qualified immunity. On July 25, 2005, Defendants County of Kankakee and Boudreau filed a Motion for Summary Judgment (#44). These Defendants were allowed an extension of time to file documents in support of their summary judgment motion. On July 28, 2005, Defendants filed a Memorandum in Support (#47) and numerous supporting documents, including the complete transcript of Plaintiff's deposition. Plaintiff was given notice of the filing of the Motions for Summary Judgment (#43, #46) and was thereby notified that he had 21 days to respond to the motions and that, if no response was filed, the motions could be granted and the case terminated without a trial. Plaintiff has not filed a response to either Motion for Summary Judgment. Following this court's careful review of the documents and arguments presented by Defendants, Defendants' Motions for Summary Judgment (#42, #44) are GRANTED.

SUMMARY JUDGMENT

As noted, Plaintiff has not filed a response to Defendants' Motions for Summary Judgment. Rule 7.1(D)(2) of the Local Rules of the Central District of Illinois provides:

> Within 21 days after service of a motion for summary judgment, any party opposing the motion shall file a response. A failure to respond shall be deemed an admission of the motion.

The Seventh Circuit has repeatedly held that such a rule is "entirely proper." Doe v. Cunningham, 30 F.3d 879, 882 (7th Cir. 1994). Further, when the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994); Columbia Pictures Indus., Inc. v. Landa, 974 F. Supp. 1, 3 (C.D. Ill. 1997). However, a party's failure to submit a timely response to a motion for summary judgment does not automatically result in summary judgment for the moving party. LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 392 (7th Cir. 1995). It remains "the movant's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law." Doe, 30 F.3d at 883. Accordingly, the district court must make the further finding that summary judgment is proper as a matter of law. LaSalle Bank, 54 F.3d at 392.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge, 24

F.3d at 920.

In this case, Defendants have provided detailed statements of undisputed material facts with supporting documentation. Briefly summarized, the undisputed facts show that, from November 2001 to August 12, 2002, Pat and Robert Ganser kept three of Plaintiff's horses for him at their farm in Manteno, Illinois. During the time that the Gansers kept Plaintiff's horses at their property, Plaintiff's horses repeatedly broke through or jumped over their fencing and ran onto adjacent farm property. On August 12, 2002, Scott Grise contacted the Kankakee County Sheriff's Department to report that Plaintiff's horses were in his bean field and further stated that this was the second time the horses had trampled his property. Also on August 12, 2002, Pat Ganser called the Kankakee County Animal Control Department to report that Plaintiff's horses had gotten loose and that she had been unable to reach Plaintiff about the problem. On August 12, 2002, Animal Control retrieved the horses from the neighboring farm property and returned them to the Ganser property. Pat Ganser told Animal Control that she was unable to restrain the horses on her property due to her recent surgery and damaged fence. She asked Animal Control to take possession of the horses and remove them from her property because she was unable to keep the horses any longer. After confirming that the fence was indeed damaged and the horses could again escape from the Ganser property, Animal Control removed the horses from the Ganser property and took them to Mike Bertrand's property for boarding. Plaintiff was notified the morning of August 13, 2002, that Animal Control had his horses.

Plaintiff subsequently spoke to Julie Boudreau from Animal Control. Boudreau told Plaintiff that he would have to pay fines to regain possession of his horses. Boudreau told Plaintiff that he would not be charged with fines for any horses whose ownership he chose to relinquish. On August 30 or 31, 2002, Plaintiff paid a fine and regained possession of one of his horses. He informed the

Sheriff's Department that he had relinquished ownership of the two remaining horses. These two horses were taken to the next available livestock auction on September 29, 2002, to be sold. One of the horses sold at the auction, and the proceeds of that sale were applied toward paying Bertrand for the expenses incurred in boarding the horse up to that point. Plaintiff regained possession of the other horse in March 2003.

Based upon these facts, Defendants argued that their actions were proper under the applicable Illinois statutes. The Illinois Domestic Animals Running At Large Act (Act), provides that "[n]o person or owner of livestock shall allow livestock to run at large in the State of Illinois." 510 Ill. Comp. Stat. 55/1 (West 2002). The statute further provides that "[a]ny livestock allowed to run at large may be impounded at a facility capable of restraining such livestock." 510 Ill. Comp. Stat. 55/1.2 (West 2002). In his Motion for Summary Judgment (#42), Defendant Bertrand argued that he is entitled to summary judgment on Plaintiff's claim because his actions, as a private individual, in boarding the horses cannot be considered state action. Bertrand also argued, in the alternative, that he is entitled to qualified immunity. In addition, Bertrand argued that the Act expressly provides for indemnification of parties such as Bertrand who agree to accept animals seized by the government for boarding purposes. See 510 Ill. Comp. Stat. 55/1.2.

In their Motion for Summary Judgment, Defendants County of Kankakee and Boudreau argued that they are entitled to summary judgment on Plaintiff's claim. They contended that Boudreau, sued in her personal capacity, is entitled to qualified immunity. They further argued that the County of Kankakee and Boudreau, sued in her official capacity, are not liable because there is no genuine issue of material fact regarding whether a policy or custom of the County led to the alleged deprivation of Plaintiff's constitutional rights.

This court has carefully reviewed all of the documentation submitted by Defendants as well

as Defendants' citations of authority. Following this careful review, this court concludes that Defendants have met their burden to show that no genuine issue of material fact exists which requires a trial. Based upon the undisputed facts and the applicable statute, this court agrees with Defendants that they are entitled to judgment on Plaintiff's claim as a matter of law.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motions for Summary Judgment (#42, #44) are GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's Complaint (#1).

(2) This court notes that Defendant Bertrand's Counterclaim (#49) against Plaintiff remains pending. The Counterclaim raises an issue under Illinois state law. By granting summary judgment in favor of Defendants on Plaintiff's Complaint, this court has resolved the only federal claim supporting federal jurisdiction in this case. This court, in its discretion, declines to exercise supplemental jurisdiction over Defendant Bertrand's state law claim contained in his Counterclaim. See 28 U.S.C. § 1367(c)(3); Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 727-28 (7th Cir. 1998). Accordingly, Defendant Bertrand's Counterclaim is dismissed without prejudice, allowing him to refile the cause in state court.

(3) This case is terminated. Therefore, the final pretrial conference set for November 21, 2005, at 1:30 p.m. and the jury trial scheduled for November 28, 2005, at 9:00 a.m. are hereby VACATED.

ENTERED this 26th day of August, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE